IRIE KAZEE v. THE STATE.

No. 19721.   Delivered May 11, 1938.

The opinion states the case.

*R. G. Allen* and *Dick Young*, both of Houston, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is robbery; the punishment, confinement in the penitentiary for fifteen years.

About 10 o'clock at night on July 7, 1937, a negro man went into the liquor store of Mrs. Laura Compton in the city of Houston and asked for five dollars' worth of whisky. He told her he wanted a twenty-dollar bill changed, and she suggested that he go to the next liquor store a block away, where he might be able to buy the whisky and get the change. While he was gone Mrs. Compton talked to Mr. Gerrard, who lived back of her store, telling him that she was afraid of the negro. When the negro returned in about twenty or twenty-five minutes he told the witness that he had two $10 bills. She replied that she could not change a ten-dollar bill, and suggested that he get the change from Mr. Gerrard, who was in the front part of the store. She then advised the negro to pick out his whisky, which he did. Mrs. Compton then put the whisky in two small sacks and placed it on the counter, saying to him, "There is your whisky. Give me your ten-dollar bill and I will get the five dollars from Mr. Gerrard." He made no reply. She then said to him: "Now give me the ten-dollar bill; your whisky is ready. Pick up your whisky. Mr. Gerrard will give you the five dollars in change." The negro replied: "I am in no hurry." He then went to the door, looked out and came back. She spoke to him once more about the whisky. He walked to the door several times. Mr. Gerrard was standing there. When the negro came back from the door the last time he drew a knife and cut Mrs. Compton on the hands. She fell to the floor, screaming. The negro grabbed the whisky and ran out of the back door.

I. W. McKeown, a witness for the State, testified that he was driving by the liquor store when the robbery occurred and saw a negro attack Mrs. Compton with a knife. As the negro

left the store the witness caught him, but he jerked loose and ran about fifteen feet, when the witness overtook him and grabbed him again. The negro dropped the whisky and disengaged himself. The witness again overtook him but was unable to hold him. This witness testified: "I don't believe I could identify the negro at all that I grappled with. I could not say whether this defendant was or was not the man. I just don't know. * * * The negro I caught out there that night, I really believe he was a little larger negro than the defendant. I could not be sure."

Mr. Gerrard, a witness for appellant, expressed the opinion that the negro who robbed and cut Mrs. Compton was a larger man than the appellant.

Appellant worked at the Biltmore Cleaning Plant, which was next door to the liquor store operated by Mrs. Compton. Mrs. Compton had not known appellant prior to the robbery. She testified that she saw appellant several times before she had him arrested; that he would dodge and hang his head in a peculiar manner whenever he saw her; that on the day she had appellant arrested he brought a box of soda water bottles into her store; that she then identified him and had him arrested. She said that appellant's hands were small and had pits on them. While the testimony shows that appellant's hands were small there is nothing in the record to show that they were pitted. It is further shown in the testimony of Mrs. Compton that she observed appellant approximately three weeks before she reached the conclusion that he was the negro who had robbed her.

Testifying in his own behalf, appellant denied he committed the offense. He testified that he was in his home with his family a short distance from the liquor store on the occasion of the robbery. His testimony was corroborated by several witnesses, some of whom seem to have been disinterested. Appellant's uncontroverted testimony was to the further effect that he did not drink whisky. All of the testimony shows that after the robbery appellant was near the liquor store from time to time in plain view of the prosecuting witness.

The testimony identifying appellant as the robber is not satisfactory. We say this in view of the fact that a witness for the State, as well as Mr. Gerrard, a witness for appellant, were of opinion that appellant was not the negro who attacked Mrs. Compton. Although Mrs. Compton observed appellant for approximately three weeks, she was unable to reach the conclusion that he was her assailant until he came into her store to return some soda water bottles. Again, the State failed to show that

appellant's hands were in the condition described by the injured party.

While testifying Mrs. Compton walked to the jury box and exhibited her hands to each member of the jury, showing them that she was unable to bend her fingers, and saying that she had completely lost the use of her hands. The bill of exception, as qualified, shows that she had theretofore described the wounds she had received without objection from appellant. However, appellant did object to the exhibition of the wounded hands to the jury. In view of the weakness of the testimony identifying appellant, and of the further fact that he received more than the minimum penalty, we are of opinion that the bill of exception reflects reversible error. The law limits the exhibition of wounds to the jury to occasions when they tend to solve some controverted issue. Mahaney v. State, 254 S. W. 946. In Newman v. State, 213 S. W. 651, Judge DAVIDSON used language as follows:

"The exhibition of the scars on the naked person before the jury could serve no purpose and tended to solve no issue, and from the ugly nature of the scars, as described, evidently must have had adverse effect upon the minds of the jury, inasmuch as they gave him two years above the minimum for the offense of manslaughter. The rule with reference to this character of testimony has been the subject of many decisions in Texas, which are collated by Mr. BRANCH in his Annotated P. C. on pages 1031 and 1032, Section 1855. It is permissible to introduce this character of testimony only when its introduction serves to illustrate some point or solve some question, or serves to throw light upon the matter connected with the proper solution of the case, and under no other circumstances. But if there is no question as to the location of the wounds, or their effect and character, such exhibition to the jury should not occur. Its exhibition could only serve the purpose of inflaming the minds of the jury."

The judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.